Christianna A. Cathcart, Esq.
Bar No. ND0008
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 655-2066
christianna@dcbankruptcy.com
*Proposed Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-00183 |
| | ) | (Chapter 11) |
| Life Stride, Inc. | ) | |
| | ) | |
| Debtor. | ) | |

## MOTION FOR LEAVE TO PAY PRE-PETITION EMPLOYEE WAGES

Comes now Life Stride, Inc. ("Life Stride" or the "Debtor"), by and through undersigned proposed counsel, pursuant to Sections 363 and 105 of Title 11 of the United States Code and Federal Rules of Bankruptcy Procedure 6003 and 6004, and move this Honorable Court for leave to pay pre-petition employee wages, and in support thereof state as follows:

### I.    Introduction

The Debtor operates a healthcare services business in the District of Columbia, providing essential mental health and community-based care to vulnerable populations. Its operations are labor-intensive and depend on a substantial workforce to deliver services funded, in significant part, through government reimbursement programs. The Debtor entered chapter 11 at a critical juncture. Although it continues to generate meaningful revenue and maintain active operations, it faces mounting financial pressure driven by cash flow constraints, rising operating costs, and regulatory obligation, which have strained its ability to meet obligations as they come due and

1

necessitated a restructuring process designed to stabilize operations, preserve value, and position the business for long-term sustainability.

Notwithstanding these challenges, the Debtor remains optimistic about its prospects in chapter 11 and continues to serve an important role in the community as both a provider of critical healthcare services and a significant employer. Its ability to sustain operations and achieve a successful reorganization depends on maintaining a stable workforce. To that end, the Debtor's employees are indispensable, serving as the primary interface with the individuals and communities it supports. Ensuring the uninterrupted payment of wages and continuation of employee benefits is therefore essential—not only as a matter of fairness, but as a fundamental business necessity that supports ongoing operations and maximizes value for the estate.

## II.      Standard

Title 11 of the United States Code (the "Bankruptcy Code") permits a debtor, "after notice and a hearing," to use or sell "property of the estate," outside the ordinary course of business. 11 U.S.C. § 363(b)(1). This Honorable Court, in turn, has broad authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

The Federal Rule of Bankruptcy Procedure openly contemplate relief, such as that sought herein, being afforded on an emergency basis upon the commencement of a case, permitting orders to be entered during the first 21 days of a given case, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

## III.     Argument: It is Necessary to Pay Employee Wages

The purpose of this chapter 11 case—consistent with the objectives of chapter 11 of Title 11 of the United States Code—is to permit the Debtor to reorganize while continuing to operate

as a going concern in the communities it serves. That objective would be materially undermined if the Debtor is unable to timely pay employee wages. Failure to do so would impose immediate financial hardship on the Debtor's workforce, erode morale in a labor-intensive and service-driven business, and create a substantial risk of employee attrition. In a healthcare environment, payroll disruptions would have consequences not only for the Debtor's operations but also for the communities it serves.

As observed by the United States Bankruptcy Court for the Southern District of New York, a debtor is permitted to expend funds outside the ordinary course of business, provided such be pegged to some articulable business justification:

> A bankruptcy court is empowered pursuant to § 363 of the Bankruptcy Code to authorize a debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances. However, the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business, before the court may permit such disposition under § 363(b).

*In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir.1983); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.1986); *In re Baldwin–United Corp.*, 43 B.R. 888, 905–906 (Bankr. S.D. Ohio 1984)).

The United States Bankruptcy Court for the District of Colorado has more specifically touched upon the justification for paying the pre-petition wages of employees at the outset of a bankruptcy case:

> The Debtor presented evidence that the failure to pay employees "would seriously undermine the morale and loyalty" of its employees and would jeopardize reorganization efforts. This stands to reason. If employees are not paid, "they will leave." And even if employees remain with the Debtor notwithstanding the non-payment of prepetition wages and benefits, "it is probable that their work would be affected by their loss of income." The Court finds that the failure to pay the Debtor's employees their prepetition wages and benefits likely would jeopardize the Debtor's reorganization process.

*In re Escalera Res. Co.*, 2015 WL 7351396, *4 (Bankr. D. Colo. 2015) (quoting *In re CEI Roofing, Inc.*, 315 B.R. 50, 60 (Bankr. N.D. Tex. 2004); *In re Tusa–Expo Holdings, Inc.*, 2008 WL 4857954, *3 (Bankr. N.D. Tex. 2008)).

Simplifying matters in this case, each of the employee wages proposed to be paid is below the statutory cap set forth in Section 507(a)(4) of Title 11 of the United States Code and, as such, would give rise to a priority claim if not timely paid. That provision expressly prioritizes claims for "wages, salaries, or commissions . . . earned by an individual," to the extent that such (i) not exceed $15,150.00 and (ii) the claim accrued "within 180 days before the date of the filing of the petition…" 11 U.S.C. § 507(a)(4).

The Debtor employs approximately 51 individuals in administrative, management, and direct care positions, each compensated at market-competitive rates consistent with ordinary course practices and prepetition expectations. These employees perform the daily functions necessary to maintain appropriate staffing levels, deliver essential services, and ensure compliance with all applicable regulatory requirements. The Debtor administers payroll through a centralized biweekly system, with payments made in arrears; the most recent payroll was processed on or about March 30, 2026, in the ordinary course of business. As of the petition date, the Debtor owes its employees compensation earned during the subsequent pay period.

For clarity, while the Debtor employs its sole equity holder, Gwendolyn Bardwell, it does not seek authority to pay any prepetition portion of her compensation, and there is no credible basis to conclude that deferring such payment would impair the Debtor's operations or its prospects for reorganization. More fundamentally, the Debtor's continued operations depend on its workforce, whose members provide essential mental health services to the community and rely on the timely payment of wages to meet their everyday financial obligations. Any delay in wage

payments would cause immediate financial hardship, risk workforce instability, and impair the Debtor's ability to continue operating in the ordinary course.

## IV.    Conclusion

WHEREFORE, the Debtor respectfully pray this Honorable Court (i) permit the Debtors to pay the pre-petition wages of all employees who are not equity holders; (iii) permit such wages to be paid in accord with the Debtors' normal payroll practices, and without delay, pursuant to the allowances of Federal Rule of Bankruptcy Procedure 6003; and (iii) afford such other and further relief.

Respectfully submitted,

Dated: April 17, 2026          By:     /s/ Christianna A. Cathcart
                                       Christianna A. Cathcart, Esq.
                                       Bar No. ND0008
                                       The Belmont Firm
                                       1050 Connecticut Avenue, NW
                                       Suite 500
                                       Washington, DC 20036
                                       Phone: (202) 655-2066
                                       christianna@dcbankruptcy.com
                                       *Proposed Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of April 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Christianna A. Cathcart
Christianna A. Cathcart