IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-00183 |
| | ) | (Chapter 11) |
| LIFE STRIDE, INC. | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

**REPORT PURSUANT TO 11 U.S.C. § 1188**

Comes now Life Stride, Inc. ("Life Stride" or the "Debtor"), by and through undersigned counsel, pursuant to Section 1188 of Title 11 of the United States Code and this Honorable Court's scheduling order, DE #7, and reports as follows:

### I.   Introduction

This is a small business case involving a health care debtor whose reorganization is measured not only in dollars, but also in continuity, compliance, and care. Life Stride has served the District of Columbia's behavioral health community for more than twenty-five years, and its restructuring efforts are aimed at preserving that mission while restoring fiscal stability. As a behavioral health provider regulated by the District of Columbia Department of Behavioral Health, Life Stride delivers mental health rehabilitation services and supported rehabilitative residential services, including through its group homes. This is not an ordinary commercial restructuring. The Debtor serves individuals who rely on Life Stride's staffing, regulatory framework, and service infrastructure for the continued delivery of care.

Life Stride's revenue is substantially tied to governmental program payments and health care reimbursements, which creates a business model that can be sound over time but vulnerable to short-term cash-flow compression when reimbursements, receivables, or administrative approvals lag behind operational need. The purpose of this case is not to effectuate a wholesale

wind-down of Life Stride or to diminish services to its consumers. To the contrary, the Debtor commenced this case to stabilize operations, impose discipline on its cash management, preserve viable contracts and revenue streams, protect continuity of care during the restructuring, and formulate a plan of reorganization that addresses creditor claims in an orderly and transparent manner.

As is often true in Subchapter V, this case has moved quickly. Since the petition date, Life Stride has obtained early operational relief, including authority to pay prepetition wages and interim authority to use cash collateral. The Debtor has filed its schedules, statements, and required financial information, and obtained approval of bankruptcy counsel's employment. Life Stride has also participated in the initial debtor interview and the section 341 meeting of creditors, obtained waiver of the appointment of a patient care ombudsman, and sought authority related to debtor-in-possession banking. Taken together, these steps have stabilized the estate and preserved the operating platform from which any plan must be funded.

The Debtor does not suggest that this case is free from complexity. Life Stride's creditor body spans governmental and taxing authorities, parties to facility-related agreements and operational contracts, health-care-related creditors, employee- and contractor-related claimants, and general unsecured creditors. The case is nonetheless capable of orderly resolution. Although the contours of the plan remain under development, the Debtor believes consensual confirmation is achievable through disciplined engagement with each constituency and a realistic assessment of what the operating business can sustain.

In that respect, this case is well suited to Subchapter V. Life Stride is not seeking to prolong this case for its own sake. It is seeking a disciplined restructuring process that preserves viable

regulated health care services, addresses creditor claims in an orderly manner, and provides creditors with the best recovery available from a functioning enterprise.

## II.      Reorganization Efforts

The Debtor's early efforts have been directed toward moving this case from emergency stabilization to the practical work of plan development. At this stage, the Debtor has begun identifying the operational, administrative, and claim treatment issues that will shape confirmation.

A central component of the Debtor's analysis concerns its group home operations. The Debtor has been evaluating and implementing an orderly transition of those operations, with ten of its fourteen community residence facilities now closed. The four remaining facilities, which house approximately twenty-four residents, are projected to close by July 26, 2026. All residential transitions have been, and will continue to be, addressed through the District's residential transition framework, including continuity of care obligations, case management procedures, residential safeguards, and consumer transition planning, with the District of Columbia actively assisting in the placement of affected individuals. The transition remains part of the Debtor's broader analysis of what operating structure can support a feasible plan.

The Debtor has also begun identifying the claims and operational obligations that will most directly affect feasibility. Governmental, taxing, and secured claims will be central to that analysis. The amount, priority, and secured status of those claims will be addressed through the claims reconciliation process and incorporated into any proposed plan treatment. Other obligations tied to the Debtor's facilities, contracts, workforce, benefits, and health care operations are likewise important, as they bear directly on the Debtor's ability to maintain compliant operations and generate the revenue from which plan payments may be made.

The Debtor will evaluate these obligations in light of projected cash flow, the needs of continuing operations, while accounting for the consequences of any discontinued operations.

General unsecured creditors will be addressed once the Debtor has a clearer picture of the claims landscape, postpetition performance, and the income available for creditor payment. The Debtor's objective is to provide the best treatment that can reasonably be supported without proposing obligations that would undermine feasibility.

Going forward, the Debtor intends to use the period before plan filing to sharpen its financial projections, reconcile the claims landscape, and continue discussions with the parties whose treatment will most directly affect confirmation. The Debtor will continue working with the Subchapter V Trustee, the Office of the United States Trustee, and key creditors and contract parties in an effort to narrow disputed issues and resolve plan treatment consensually before confirmation.

### III.   Conclusion

Life Stride's path to reorganization remains a work in progress, but it is becoming more defined. The issues that remain are real, including cash flow, regulatory obligations, consumer transitions, and the cost of reshaping the business around operations that can be sustained. Even so, the Debtor believes those issues can be addressed through a disciplined Subchapter V process aimed at preserving viable regulated health care services, maintaining a functioning business, and developing a plan that offers creditors the best recovery the Debtor can realistically support.

*[Signature on Following Page]*

Respectfully Submitted,

Dated: May 27, 2026                    By:    /s/ Christianna A. Cathcart
                                              Christianna A. Cathcart, Esq.
                                              The Belmont Firm
                                              1050 Connecticut Ave N
                                              Suite 500
                                              Washington, DC 20036
                                              Phone: (202) 655-2066
                                              christianna@dcbankruptcy.com
                                              *Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of May 2026, a copy of the foregoing was served electronically upon filing via the ECF system.

                                              /s/ Christianna A. Cathcart
                                              Christianna A. Cathcart

5